**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

In re:

VIVARO CORPORATION, *et al.,*

        Debtors.

-----------------------------------------------------------x

VIVARO CORPORATION, STI PREPAID, LLC, KARE DISTRIBUTION, INC., STI TELECOM, INC., TNW CORPORATION, STI CC 1 , LLC and STI CC 2, LLC,

        Plaintiffs,

vs.

RAZA COMMUNICATION, INC. and SALIM HEMANI, individually,

        Defendants.

-----------------------------------------------------------x

NOT FOR PUBLICATION

Chapter 11

Case No. 12-13810 (MG)

(Jointly Administered)

Adv. Pro. No. 12-01928 (MG)

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

*A P P E A R A N C E S*:

HERRICK, FEINSTEIN LLP
*Attorneys for Plaintiffs*
2 Park Avenue
New York, NY 10016
By:    Justin B. Singer, Esq.

ZIESKE LAW
*Attorneys for Defendants*
123 S. Eastwood Drive #222
Woodstock, Illinois 60098
By:    William F. Zieske, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Motion for Partial Judgment on the Pleadings Pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure and Rule 12(c) of the Federal Rules of Civil Procedure Dismissing Counterclaim of Raza Communication, Inc.* (the "Motion," ECF Doc. # 36) filed by plaintiff and counterclaim defendant Kare Distribution, Inc. ("Kare"). The Motion is supported by the Declaration of Lydia Jahn (ECF Doc. # 37). Raza Communication, Inc. ("Raza") filed an opposition to the Motion (ECF Doc. # 41), and Kare filed a reply (ECF Doc. # 42). Through the Motion, Kare seeks to dismiss the one counterclaim asserted by Raza.

The disputes in this case arise from a distribution agreement between Kare and Raza, whereby Kare sold prepaid calling cards to Raza, which Raza agreed to distribute in an exclusive territory in Chicago. When Raza failed to pay substantial outstanding invoices, Kare stopped honoring the exclusivity clause in the distribution agreement and ultimately terminated the distribution agreement. Kare sued Raza to recover the amount due; Raza counterclaimed, seeking to recover alleged lost profits because Kare sold to parties that Raza claims were in Raza's exclusive territory. The distribution agreement, governed by New York law, contains a limitation of liability clause barring recovery of consequential damages. The issue principally addressed in this opinion is whether Kare is entitled to judgment on the pleadings on Raza's consequential damages claim.[1]

For the reasons set forth below, the Court grants the Motion in part, dismissing the counterclaim without prejudice, and denies it in part.

---

[1] At some future date, if this matter is not settled, the Court will have to determine which parties breached the contract, and whether the counterparty's performance was excused as a result of a material breach by the opposing party. The only issue decided now is that Raza's claim for consequential damages is dismissed without prejudice. That ruling will hopefully lead the parties to resume settlement negotiations.

# I. BACKGROUND

## A. Procedural History

On September 5, 2012 (the "Petition Date"), Kare filed a voluntary petition for chapter 11 relief, along with Vivaro Corporation, STi Prepaid, LLC, STI Telecom, Inc., TNW Corporation, STi1, LLC and STi2, LLC (the "Debtors"). Those chapter 11 cases are being jointly administered on docket number 12-13810. The Debtors initiated this adversary proceeding by filing a complaint against Raza on November 5, 2012 (ECF Doc. # 1). Raza filed a motion to dismiss (ECF Doc. # 10), arguing that it only transacted business with Kare and STi Prepaid (the "Plaintiffs"). The parties agreed that the Debtors could amend the complaint naming only Kare and STi Prepaid as the plaintiffs. The amended complaint was filed on January 10, 2013 (ECF Doc. # 16). Raza answered the amended complaint on January 25, 2013, and asserted a counterclaim against Kare (ECF Doc. # 17).

Raza filed a proof of claim in the Debtors' chapter 11 cases on February 1, 2013, asserting an unsecured claim against Kare for damages relating to the same conduct at issue in Raza's counterclaim. Kare filed an answer to the counterclaim on February 14, 2013 (ECF Doc. # 21). The parties proceeded to mediation on August 5, 2013, but so far have been unable to reach a settlement.

## B. Relationship Between Kare and Raza

Before the Petition Date, Kare sold prepaid calling cards to Raza, and Raza distributed those calling cards in the Chicago market area pursuant to a distribution agreement dated September 5, 2007 (the "Distribution Agreement," Motion Ex. G). STi Prepaid also sold prepaid calling cards to Raza, although without a distribution agreement. The Plaintiffs allege that Raza

owes $1,012,820 for calling cards that Kare delivered to Raza, and $87,414.79 for calling cards that STi Prepaid delivered to Raza.

The Plaintiffs annexed copies of the Distribution Agreement to their amended complaint. (*See* Motion Ex. G.)  The agreement granted Raza exclusive territory protection in the Chicago market area.  Kare agreed not to sell calling cards directly to the sub-distributors Raza supplies. Additionally, the Distribution Agreement limited Kare's liability for any special, indirect, incidental, or consequential damages.

In the counterclaim, Raza alleges that Kare breached the agreement by directly selling products to Raza's sub-distributors.  Raza claims that it warned Kare not to distribute to certain sub-distributors, yet Kare continued despite the warnings.

On January 25, 2012, Kare terminated the Distribution Agreement, citing Raza's failure to make timely payments.  In its counterclaim, Raza alleges that Kare caused Raza to suffer $3,393,167.96 in damages "through the destruction and/or wrongful taking of Raza's customer base and sales."  (ECF Doc. # 17 at 33.)  Raza also alleges that Kare breached the terms of the Distribution Agreement's exclusive territory provisions.

### C.     The Motion Before the Court

Kare asserts that it is entitled to judgment on the pleadings regarding Raza's counterclaim because:  (1) under the terms of the Distribution Agreement, Raza may not seek consequential damages, and (2) the counterclaim lacks sufficient facts to state a plausible breach of contract claim.

First, Kare argues that Raza's claim for lost profits is a claim for consequential damages. The limitation of liability clause in the Distribution Agreement explicitly protects Kare from liability for consequential damages.  This clause provides the following:

4

> NOTWITHSTANDING ANYTHING ELSE IN THIS AGREEMENT OR OTHERWISE, KARE WILL NOT BE LIABLE OR OBLIGATED WITH RESPECT TO ANY SUBJECT MATTER OF THIS AGREEMENT OR UNDER ANY CONTRACT, NEGLIGENCE, STRICT LIABILITY OR OTHER LEGAL OR EQUITABLE THEORY . . . (c) FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES . . . .

(*See* Motion Ex. G.) Kare argues that the limitation of liability clause is enforceable and may only be avoided under New York law in instances of (1) willful or gross negligence or (2) intentional misconduct, such as fraud or bad faith.

Second, Kare asserts that even if the limitation of liability clause does not apply, Kare is entitled to judgment on the pleadings because Raza fails to plead sufficient facts to render its breach of contract clause plausible. Specifically, Raza does not identify any parties to whom Kare purportedly sold calling cards in violation of the Distribution Agreement.[2]

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 12(c), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b), any party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. In deciding a Rule 12(c) motion for judgment on the pleadings, courts apply the same standard applicable to a motion under Rule 12(b)(6). *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir.2010); *see also* FED. R. CIV. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c).").

To survive a motion to dismiss, the plaintiff must "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). When considering a motion to dismiss under either Rule 12(b)(6) or Rule 12(c), the court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Koppel v. 4987 Corp.*, 167

---

[2] If Raza amends its counterclaim seeking to recover lost profits, it will also need to identify parties to whom Kare sold prepaid calling cards that Raza contends were covered by its exclusive distribution rights.

5

F.3d 125, 133 (2d Cir. 1999). The court's objective is not to determine whether the plaintiff will succeed in her claim, but instead whether the plaintiff is entitled to support her claim by offering evidence. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 65 (2d Cir. 2010) (citation omitted). To survive a motion to dismiss, a complaint must plead factual content allowing for a reasonable inference that the defendant is liable for the alleged conduct. *Iqbal*, 556 U.S. at 678.

When ruling on a Rule 12(b)(6) motion, courts ignore legal conclusions and consider the factual allegations in context, drawing on "judicial experience and common sense." *Id*. at 679. Pleadings that merely provide labels and conclusions or that contain "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Official Comm. of Unsecured Creditors v. UMB Bank N.A. (In re Residential Capital, LLC)*, 495 B.R. 250, 258 (Bankr. S.D.N.Y. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must limit its review to facts and allegations contained in (1) the complaint, (2) documents either incorporated into the complaint by reference or attached as exhibits, and (3) matters of which the court may take judicial notice. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Additionally, the Court may consider documents not attached to the complaint or incorporated by reference, but "upon which the complaint *solely* relies and which *[are] integral to the complaint*." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks omitted) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)); *see also Kalin v. Xanboo, Inc.*, No. 04 Civ. 5931(RJS), 2009 WL 928280, at *4 (S.D.N.Y. Mar. 30, 2009); *Grubin v. Rattet (In re Food Mgmt. Grp.)*, 380 B.R. 677, 690 (Bankr. S.D.N.Y. 2008) (concluding that a court may consider documents that have "not been

incorporated by reference where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint") (internal quotation marks omitted).

The questions before the Court in this case are whether: (1) the lost profits asserted by Raza constitute consequential damages; (2) the limitation of liability clause can be set aside; and (3) Raza has pled sufficient facts to support its counterclaim. The Court addresses each of these questions in turn.

### A.   The Lost Profits Asserted by Raza Constitute Consequential Damages

Under New York law, "lost profits only constitute general damages where the non-breaching party seeks to recover money owed directly by the breaching party under the parties' contract." *Biotronik A.G. v. Conor Mediasystems Ireland, Ltd.*, 945 N.Y.S.2d 258, 258 (App. Div. 2012) (citing *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Col.* (*Pepsi Cola*), 650 F. Supp. 2d 314, 322 (S.D.N.Y. 2009). General damages "flow naturally and probably from the breach," while consequential damages flow from the benefits that performance would have produced. *Global Crossing Telecomms., Inc. v. CCT Commc'ns, Inc. (In re CCT Commc'ns, Inc.)*, 464 B.R. 97, 116–17 (Bankr. S.D.N.Y. 2011).

In *Biotronik*, the plaintiff sought lost profits that it would have realized by reselling the defendant's goods to other parties pursuant to a distribution agreement. *See Biotronik*, 945 N.Y.S.2d at 258. In *Pepsi Cola*, the plaintiff sought "to recover lost profits from lost sales to third-parties that [would not have been] governed by the [contract between plaintiff and defendant]." *Pepsi Cola*, 650 F. Supp. 2d at 322. In both cases, the respective courts determined that the lost profits at issue constituted consequential, not general, damages. *See id.*; *Biotronik*, 945 N.Y.S.2d at 258.

7

Here, the lost profits Raza seeks are consequential damages. Raza is not seeking to recover money directly owed to it under the Distribution Agreement. Rather, Raza seeks to recover lost profits from unmade sales to third-parties in collateral transactions, none of which would have been governed by the contract between Raza and Kare.

B.     **The Limitation of Liability Clause Cannot Be Set Aside**

On its face, the Distribution Agreement shields Kare from liability for consequential damages:

> NOTWITHSTANDING ANYTHING ELSE IN THIS AGREEMENT OR OTHERWISE, KARE WILL NOT BE LIABLE OR OBLIGATED WITH RESPECT TO ANY SUBJECT MATTER OF THIS AGREEMENT OR UNDER ANY CONTRACT, NEGLIGENCE, STRICT LIABILITY OR OTHER LEGAL OR EQUITABLE THEORY . . . (c) FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES . . . .

(*See* Motion Ex. G.)

Generally, New York law recognizes limitation of liability provisions as an "allocation of risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor." *Metro. Life Ins. v. Noble Lowndes Int'l*, 643 N.E.2d 504, 507 (N.Y. 1994); *see also CCT Commc'ns*, 464 B.R. at 05–06 (recognizing validity of limitation of liability clause under New York law). In limited circumstances, however, courts will decline to enforce these clauses, including for intentional wrongdoing. *See Metro. Life*, 642 N.E.2d at 509 ("[T]he conduct necessary to pierce an agreed-upon limitation of liability in a commercial contract, must smack of intentional *wrongdoing*.") (internal quotation marks omitted; emphasis in original).

>Wrongdoing is narrowly defined. The First Department has stated that:

>>Enforcement of [a limited liability provision] is precluded when "the misconduct for which it would grant immunity smacks of intentional wrongdoing," where it is willful, "as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith. Or, when, as in gross negligence, it betokens reckless indifference to the rights of others."

*Banc of Am. Sec. LLC v. Solow Bldg. Co. II, L.L.C.* (*Solow*), 847 N.Y.S.2d 49, 53 (App. Div. 2007) (quoting *Kalisch-Jarcho, Inc. v. City of New York*, 448 N.E.2d 413, 417 (N.Y. 1983)). The court rejected essentially the same argument that Kare makes to this Court[3] when it held the following:

>[T]he Court of Appeals did not intend economic self-interest to be applied as an expansive principle to excuse all manner of misconduct. Economic self-interest is the motivation for fraud, self-dealing, and breach of fiduciary duty; it does not excuse such misconduct nor preclude an injured party from seeking redress in the courts.

*Solow*, 847 N.Y.S.2d at 55 (internal quotation marks omitted). The *Solow* court went on to explain that the pertinent question is not whether an action inured to a party's economic self-interest, but whether the action was taken out of a "*legitimate* economic self-interest or, alternatively, whether it evinces the intent to inflict economic harm . . . ." *Id.* at 57 (emphasis in original).

The First Department later elaborated on *Solow's* holding, explaining that the inquiry in *Solow* was limited to whether the acts in question advanced a "legitimate economic self-interest that could render an exculpatory clause . . . unenforceable as a matter of public policy." *Meridian Capital Partners, Inc. v. Fifth Ave. 58/59 Acquisition Co. LP*, 874 N.Y.S.2d 440, 441 (App. Div. 2009); *see also Devash LLC v. German Am. Capital Corp.*, 959 N.Y.S.2d 10, 14

---

[3] *See* Jan. 15, 2014 Tr. (ECF Doc. # 43) at 14:9–20 ("[I]f it's motivated by some economic self-interest then it doesn't rise to the level of reckless indifference."); *see also* Jan 15, 2014 Tr. at 12:20–23 ("[W]hen a party is acting out of their own economic self-interest, the Courts all agree that that will not rise to the level of willful misconduct.").

9

(App. Div. 2013) (refusing to set aside limitation of remedy clause where allegations did not establish conduct "unrelated to any legitimate economic self-interest") (internal quotation marks omitted); *see also Tap Holdings, LLC v. Orix Fin. Corp.*, 970 N.Y.S.2d 178, 185 (App. Div. 2013) (distinguishing *Devash* and focusing on allegations that actions "had no legitimate business interest"). Thus, where a breaching party's alleged conduct advances a legitimate economic self-interest, the court may not set aside the limitation of liability clause in the interest of public policy. *See Devash*, 959 N.Y.S.2d at 14. But economic self-interest alone is not enough; the allegedly breaching party must act in furtherance of a *legitimate* business interest. *Tap Holdings*, 970 N.Y.S.2d at 185.

In *Devash*, the First Department held that the allegedly breaching conduct advanced a legitimate economic self-interest because it "was intended to maximize the lender's available options and the value of the property and the loan." *Devash*, 959 N.Y.S.2d at 14. In contrast, when the alleged conduct was "intended to cut off [another party's] ability to collect [under a previous agreement]," it served no legitimate business purpose. *Tap Holdings*, 970 N.Y.S.2d at 185. Instead, that conduct was "in bad faith and calculated solely to circumvent any obligation [owed to another party]," and the contractual waiver of liability was set aside. *Id*.

Thus, the cases reveal two ends of a spectrum: On the one hand, a party's self-serving actions will provide cause for setting aside a limitation of liability clause if they do not serve a legitimate business interest. *See id* at 184–85. On the other hand, intentional, efficient breach of a contract—without more—will not provide cause for setting aside the provision. *See Devash*, 959 N.Y.S.2d at 14. The question is whether the alleged conduct here provides cause for setting aside the clause in this case. One court described a plaintiff's burden in attempting to avoid a limitation of liability clause as "demanding nothing short of . . . a compelling demonstration of

10

egregious intentional misbehavior evincing extreme culpability; malice, recklessness, deliberate or callous indifference to the rights of other, or an extensive pattern of wanton acts." *Deutsche Lufthansa AG v. Boeing Co.*, No. 06 cv 7667, 2007 WL 403301, at *3 (S.D.N.Y. Feb. 2, 2007).

Raza's sparse allegations do not meet this burden; the limitation of liability provision cannot be set aside. Kare contends that it stopped honoring the exclusive distribution clause because Raza materially breached the Distribution Agreement by failing to pay the substantial outstanding invoices, thereby advancing Kare's legitimate economic self-interest. If Raza can plead more detail about Kare's supposed systematic breaches alleged in the counterclaim, sufficient to indicate a "pattern of wanton acts" taken without any legitimate business interest, Raza's allegations may support setting aside the limitation of liability clause. *Deutsche Lufthansa*, 2007 WL 403301, at *3. But much more is needed from Raza. Therefore, Kare's Motion is **GRANTED** and the Counterclaim is **DISMISSED WITHOUT PREJUDICE,** with leave to amend within thirty (30) days from the date of this Order, to the extent that the Counterclaim seeks to recover lost profits.

### C.   Kare's Motion to Dismiss the Counterclaim for Failure to Plead Facts Supporting a Breach of Contract Claim

In the alternative, Kare asserts that Raza fails to adequately plead facts sufficient to support a cognizable breach of contract claim. (*See* Motion at 20.) Breach of contract claims require "(1) the existence of a contract; (2) plaintiff's performance of the contract; (3) defendant's breach of the contract; and (4) damages suffered as a result of the breach." *Kramer v. Lockwood Pensions Servs.*, 653 F. Supp. 2d 354, 386 (S.D.N.Y. 2009). "Courts have generally recognized that relatively simple allegations will suffice to plead a breach of contract claim even post-*Twombly* and *Iqbal*." *Comfort Inn Oceanside v. Hertz Corp.*, No. 11-CV-1534 (JG) (JMA), 2011 U.S. Dist. LEXIS 126294, *21–33 (E.D.N.Y. Nov. 1, 2011).

11

The Counterclaim sufficiently pleads the elements of a breach of contract claim. The defect in the pleading relates only to Raza's effort to recover consequential damages, and to that extent the Counterclaim is dismissed without prejudice, as explained above.

### III. CONCLUSION

Each party accuses the other of breaching the Distribution Agreement. Whether Raza's alleged material breach of contract by failing to pay amounts due excused Kare's performance of the exclusive distribution clause cannot be determined on a motion to dismiss. But on the pleadings before the Court, Raza has not pleaded facts sufficient to avoid the limitation of liability clause in the Distribution Agreement. For the reasons stated above, the Motion is **GRANTED** in part, and the Counterclaim is dismissed without prejudice to the extent it seeks to recover consequential damages; the Motion is **DENIED** insofar as it seeks to dismiss the Counterclaim in its entirety.

**IT IS SO ORDERED.**

Dated: February 6, 2014
New York, New York

_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge